## Bivins, Appellant, *v.* Philadelphia Federation of Teachers.

Argued November 12, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Peter Hearn*, with him *James T. Giles*, and *Pepper, Hamilton & Scheetz*, for appellant.

*Leonard M. Sagot,* with him *John J. Poserina, Jr., A. Martin Herring,* and *Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot,* for appellee.

OPINION PER CURIAM, December 20, 1971:
Decree affirmed. Each party to pay own costs.
Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

This appeal is from a final decree of the lower court sustaining appellees' preliminary objections to a complaint in equity, and dismissing the complaint. The preliminary objections were based on lack of jurisdiction by reason of non-exhaustion of the internal grievance procedures established by the constitution of the defendant union. For the reasons hereinafter set forth, I believe the lower court had and should have exercised jurisdiction over the cause of action set forth in the complaint. I therefore respectfully dissent from the order of affirmance.[1]

Plaintiffs, members of Local No. 3 of the Philadelphia Federation of Teachers, filed a complaint in equi-

---

[1] Contrary to the requirements of Rule 63 of this Court, no opinion has been filed by the trial court in support or explanation of its action. The per curiam order of this Court, unaccompanied by any opinion, leaves the plaintiffs completely in the dark as to the reasons for decision. This kind of treatment is usually reserved for cases in which the Court deems the law to be settled, or where the lawsuit or at least the points raised on appeal appear to be frivolous, or where for some other reason no useful purpose would be served by an opinion. Usually in such cases there is a carefully considered opinion by the lower court. In the case at bar, none of these normal conditions is present; the suit is not only not frivolous, but in my view raises important questions of First Amendment rights as they pertain to union membership.

ty[2] seeking to enjoin their local from enforcing certain amendments to its constitution adopted February 5, 1971. These amendments, *inter alia,* prohibit any member who during the preceding 24 months has refused to participate in strike activity from holding elective office within the defendant organization. They thus apply to appellants, who refused to participate in a strike conducted by defendants in September and October, 1970. From the record[3] it appears that union elections were scheduled for the late spring[4] and that appellants were anxious to adjudicate their grievances before that time. On February 13, pursuant to the grievance procedure contained in the local's constitution, an appeal was launched with the Public Review Board of the American Federation of Teachers seeking to void the amendments. No action emanated from this body until May 7, when appellants were notified by the chairman that a member of the Public Review Board had been appointed to hear the complaint. As far as the record shows, no hearing in fact has ever been held; appellees' brief, submitted in November, 1971, states that a decision by the Board is "imminent". On May 14, with the elections only five days away, and the induction of new office holders scheduled for June 1, appellants

---

[2] The complaint was filed by eight members of the defendant union on behalf of themselves and other members similarly situated. The appeal, however, was taken only by the first named plaintiff, Eugene S. Bivins, III, though again on behalf of the entire class. For the sake of consistency, all references will be in the plural to either plaintiffs or appellants.

[3] The record consists primarily of the complaint in equity, an accompanying petition of plaintiffs for a preliminary injunction, and preliminary objections to the complaint. No further pleading took place, and no depositions or other steps in the nature of discovery were taken.

[4] Appellants' brief indicates the date of the election to have been May 19, 1971; the complaint states that the terms of offices up for election would commence on or about June 1, 1971.

filed this complaint in equity, seeking, *inter alia,* an injunction against enforcement of the constitutional provision barring appellants from holding office and requiring the acceptance of appellants' nominations for office.[5] The complaint averred that as a result of repeatedly futile efforts to avail themselves of the union's internal remedies, plaintiffs had no adequate remedy at law and were suffering irreparable harm.

Defendants filed preliminary objections on May 19, alleging that prior to the exhaustion of internal union procedures, viz., a decision by the Public Review Board, the courts of this Commonwealth do not have jurisdiction over the subject matter of the dispute. Despite appellants' averments that further reliance on review by the Board would be futile, these objections were sustained by the lower court on June 8, 1971, and this appeal followed.

Both sides rely on the decision of this Court in *Falsetti v. Local Union No. 2026, U.M.W. of America,* 400 Pa. 145, 161 A. 2d 882 (1960), to support their positions. In that case we announced a policy of judicial self-restraint in union disputes and adopted the doctrine of exhaustion of internal remedies. "We are hopefully entering a new era in union self-discipline and responsibility. Rather than adopt judicial rules that would discourage resort to union processes which now must meet detailed elementary standards of fairness, we will attempt in every way to encourage the steady evo-

---

[5] While the election of May, 1971, had been held by the time this appeal was heard, I do not think that the case has thereby been rendered moot. The complaint alleges a continuing illegal classification of plaintiffs as ineligible to hold office and also continuing coercion to participate in strikes believed to be illegal. There undoubtedly will be further elections to union office, and if plaintiffs are now denied appellate review, they could easily be subject to similar burdens at those elections and still be without an adequate remedy.

lution of internal democracy. A strict adherence to the rule of exhaustion will go far toward placing the initial responsibility where it rightfully belongs—on the association itself. It is only when an issue has become fully 'ripe' for adjudication that our courts will enter the picture." (p. 163) Careful not to undercut this general policy, we recognized only four narrow exceptions to the rule of non-interference. Pursuit of intra-organization appeals should not be required where (1) this remedy is illusory; (2) the association officials themselves have precluded the member from effectively pursuing the prescribed procedure; (3) the internal remedy is overly burdensome; or (4) to require the exhaustion of remedies would lead to irreparable harm. 400 Pa. at 159-161.

In my view, at the time of filing the complaint in the case at bar, appellants had satisfied both qualifications (2) and (4). The preliminary objections, therefore, should have been overruled. The inordinate delay by the Review Board even in appointing one of its members to hear this dispute could be interpreted as a conscious effort by the union to sabotage appellants' appeal taken in accordance with the organization's procedures until after the election had passed. Even assuming the good faith of the union and the Board, by the 14th of May appellants were in desperate straits; they had understandably put off any action until that time, expecting the Review Board to move on their petition. Their only recourse at that point was to seek an injunction. Under these circumstances, to have required action by the Board before the Common Pleas Court could assume jurisdiction in effect deprived appellants of their right (arguably) to hold union office. The complaint alleged, understandably, that this deprivation constituted irreparable harm.

It seems clear to me that the appellants were well within the *Falsetti* exceptions, and were therefore en-

titled to be heard by a chancellor. The peremptory dismissal of the complaint was, in my view, without warrant.

